UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

KEVIN SCOTT VANRHEE,

    Petitioner,    Case No. 1:19-cv-956

v.           Honorable Paul L. Maloney

LES PARISH,

    Respondent.

_____/

## **OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

## Discussion

### I.    Factual allegations

Petitioner Kevin Scott VanRhee is incarcerated with the Michigan Department of Corrections at the Oaks Correctional Facility (ECF) in Manistee County, Michigan.  On March 16, 2015, Petitioner pleaded *nolo contendere* in the Allegan County Circuit Court to one count of first-degree criminal sexual conduct (CSC-I), in violation of Mich. Comp. Laws § 750.520b, one count of second-degree criminal sexual conduct (CSC-II), in violation of Mich. Comp. Laws § 750.520c, and one count of fourth-degree criminal sexual conduct (CSC-IV), in violation of Mich. Comp. Laws § 750.520e.  On April 20, 2015, the court sentenced Petitioner to concurrent prison terms of 25 to 45 years for CSC-I, 10 to 15 years for CSC-II, and 1 year, 4 months to 2 years for CSC-IV.[1]

Petitioner filed his petition *in pro per*; however, he is presently represented by counsel.  Petitioner's supplemental brief (ECF No. 11), submitted by counsel, provides a detailed procedural history of Petitioner's challenges to his convictions and sentences in the state courts. Petitioner describes the proceedings in the trial court as follows:

> On February 2, 2015, the Allegan County Prosecutor charged Mr. Vanrhee with five counts (Counts 1-5) of Criminal Sexual Conduct–First Degree (CSC 1st) (penetration, person under 13, defendant 17 years of age or older), in violation of MCL750.520b(1)(a)and MCL 750.520b(2)(b); two counts(Counts 6-7) of CSC 3rd (incest), in violation of MCL 750.520d(1)(d); two counts (Counts 8-9) of CSC 2nd (sexual contact, person under thirteen, defendant 17 years of age or older) in violation of MCL 750.520c(2)(b); and one count (Count 10) of assault with intent to commit sexual conduct in the 2nd degree, in violation of MCL 750.520g(2). (Felony Information, February 2, 2015, p. 1-3). Mr. Vanrhee's three minor daughters were the victims.

---

[1] Petitioner was discharged from his CSC-IV sentence on January 5, 2017, after he had served the maximum sentence. See Michigan Department of Corrections (MDOC) Offender Tracking Information System (OTIS) https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=957454 (visited December 23, 2019).  This Court takes judicial notice of the information provided by a search of the MDOC OTIS website with regard to Petitioner. *See, e.g., Carpenter v. Mich. Dep't of Corr. Time Computation Unit*, No. 1:13-cv-313, 2013 WL 1947249, at *1 n.1 (W.D. Mich. May 9, 2013); *Ward v. Wolfenbarger*, 323 F. Supp. 2d 818, 821-22 n.3 (E.D. Mich. 2004).

On March 16, 2015, pursuant to a plea agreement, the Allegan County Prosecutor filed an amended felony information adding one count (Count 11) of CSC 4th (contact, person aged 15, incest) in violation of MCL 750.520e(1)(g). (Amended Felony Information, March 16, 2015, p. 1-2). According to the plea agreement, in exchange for Mr. Vanrhee's plea to one count of CSC 1st (Count 1), one count of CSC 2nd (Count 9), and the single added count of CSC 4th (Count 11), the prosecutor would dismiss the remaining counts. (Transcript, Plea Hearing, p. 5-6). The plea agreement also provided that Mr. Vanrhee would not be subject to the 25-year mandatory minimum sentence prescribed MCL 750.520b(2)(b)for violations of MCL 750.520b(1)(a), which was the precise subsection of the CSC 1st statute under which Mr. Vanrhee was charged.

During the plea hearing, the court inquired of the parties: "the plea . . . to a criminal sexual conduct in the first degree . . . sits under the elements which would not include a maximum—or minimum of 25 years. Is that correct?" (Transcript, Plea Hearing, March 16, 2015, p. 3). The prosecutor affirmed, "[t]hat is correct, without . . . . Count 1 does indicate on here that there is a minimum, but we are stating on the record that it does not apply." *Id.* Mr. Vanrhee's attorney agreed that pursuant to the plea agreement it was his client's understanding that he was not subject to the 25-year mandatory minimum. *Id.* at 4.

After affirming that the parties agreed as to the terms of the plea agreement, the trial court explained the agreement to Mr. Vanrhee. The trial court stated: "It's my understanding you are pleading guilty to criminal sexual conduct in the first degree, maximum time you could be incarcerated is a life offense . . . It is pursuant to the plea agreement it's my understanding that this particular count does not mandate a minimum of 25 years." (Tr., Plea Hearing, p. 5). When the court asked if it had stated the plea agreement correctly, Mr. Vanrhee replied, "Yes, ma'am." (Tr., Plea Hearing, p. 6). The transcript of the plea hearing incontrovertibly shows that the trial court, defense counsel, prosecutor, and Mr. Vanrhee all intended for Mr. Vanrhee not to be subject to the 25-year mandatory minimum otherwise applicable to violations of MCL 750.520b(2)(b)where the victim is under 13 years old and the defendant is over age 17.

Mr. Vanrhee was permitted to enter a no contest plea to Counts 1, 9, and 11 because "intoxication bars Mr. Vanrhee from remembering the elements of the crime." (Tr., Plea Hearing, p. 8). Defense counsel offered the police report from the Allegan County Sheriff's Department to establish the factual basis for the no contest plea. (Tr., Plea Hearing, p. 8). The court reviewed the police report and read aloud the portions that appeared to satisfy the essential elements of the counts of conviction; specifically, the court articulated the approximate dates of the incidents at issue, the ages of Mr. Vanrhee's daughters at the time of the incidents, and the type of contact or penetration that occurred. (Tr., Plea Hearing, p. 10-15). Both parties indicated that they believed the court had established a sufficient factual basis to accept the plea. (Tr., Plea Hearing, pp,13-14).

(Pet'r's Supp. Br., ECF No. 11, PageID.184-186.) At sentencing, the trial court resolved offense variable scoring issues favorably to Petitioner. The resulting sentencing guidelines minimum sentence range was 108 to 180 months. Nonetheless, for the CSC-I conviction, the court determined "that the guidelines did not accurately reflect the number of sexual penetrations, the level of predatory activity, or the seriousness of the psychological injury to the victims." (*Id.*, PageID.186.) Accordingly, the court departed from the guidelines with respect to the CSC-I sentence, imposing a minimum sentence of 25 years.

Three months after Petitioner was sentenced, the Michigan Supreme Court issued its opinion in *People v. Lockridge*, 870 N.W.2d 502 (2015). The *Lockridge* decision was based on a line of federal cases regarding Sixth Amendment issues and sentencing beginning with *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and including *Blakely v. Washington*, 542 U.S. 296 (2004), *United States v. Booker*, 543 U.S. 220 (2005), and *Alleyne v. United States*, 570 U.S. 99 (2013).

In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. *Apprendi* enunciated a new rule of Sixth Amendment jurisprudence.

In the subsequent case of *Blakely*, the Court applied the rule of *Apprendi* to a state sentencing-guideline scheme, under which the maximum penalty could be increased by judicial fact-finding. The *Blakely* Court held that the state guideline scheme violated the Sixth and Fourteenth Amendments, and reiterated the rule that any fact that increased the maximum sentence must be "admitted by the defendant or proved to a jury beyond a reasonable doubt." *See Booker*, 543 U.S. at 232 (citing *Blakely*, 542 U.S. at 303).

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court determined its conclusion with regard to the state sentencing guideline scheme in *Blakely* would also apply to the federal sentencing guidelines. One group of five justices concluded that the federal sentencing guidelines ran afoul of the Sixth Amendment. Another group of five justices determined the appropriate remedy was to make the guidelines discretionary.

Subsequently, in *Alleyne v. United States*, 570 U.S. 99 (2013), the Supreme Court held that the *Blakely* line of cases applies equally to mandatory minimum sentences.

At the time Petitioner was sentenced, however, the Michigan Court of Appeals had already concluded that *Alleyne* only prohibited judicial factfinding used to determine a mandatory minimum sentence; it had no impact on judicial factfinding in scoring the sentencing guidelines producing a minimum range for an indeterminate sentence, the maximum of which is set by law. *See People v. Herron*, 845 N.W.2d 533, 539 (Mich. App. 2013). The Sixth Circuit also suggested that *Alleyne* did not decide the question whether judicial factfinding under Michigan's indeterminate sentencing scheme violated the Sixth Amendment and, as a consequence, the question was not a matter of clearly established Supreme Court precedent. *Kittka v. Franks*, 539 F. App'x 668, 673 (6th Cir. 2013); *see also Saccoccia v. Farley*, 573 F. App'x 483, 485 (6th Cir. 2014) ("But *Alleyne* held only that 'facts that increase a mandatory *statutory* minimum [are] part of the substantive offense.' . . . It said nothing about guidelines sentencing factors . . . .") (emphasis added). The Sixth Circuit has since clarified that "Michigan's sentencing regime violated *Alleyne*'s prohibition on the use of judge-found facts to increase mandatory minimum sentences." *Robinson v. Woods*, 901 F.3d 710, 716 (6th Cir. 2018).

The Michigan Supreme Court granted leave to appeal on an application that raised the *Alleyne* issue. *People v. Lockridge*, 846 N.W.2d 925 (Mich. 2014). The court concluded the

*Herron* decision was wrong, reasoning that, because the "guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range," they increase the "mandatory minimum" sentence under *Alleyne*. *People v. Lockridge*, 870 N.W.2d 502, 506 (Mich. 2015) (emphasis in original). As a consequence, the *Lockridge* court held that the mandatory application of Michigan's sentencing guidelines was unconstitutional. The Court's remedy, consistent with *Booker*, was to make the guidelines advisory only. *Id.* at 520-21.

The Michigan Supreme Court made its holding in *Lockridge* applicable to cases still "pending on direct review." *Id.* at 523. The *Lockridge* court identified a limited group of defendants that might demonstrate the potential for plain error sufficient to warrant a remand to the trial court: "defendants (1) who can demonstrate that their guidelines minimum sentence range was actually constrained by the violation of the Sixth Amendment and (2) whose sentences were not subject to an upward departure . . . ." *Id.* at 522 (footnote omitted). If a remand was appropriate, the supreme court called upon the trial court, on remand, to determine if it "would have imposed a materially different sentence but for the unconstitutional restraint . . . ." *Id.* at 524. The remand remedy adopted by the *Lockridge* court was the same remedy proposed by the Second Circuit Court of Appeals in *United States v. Crosby*, 397 F.3d 103, 117-18 (2d Cir. 2005), after and in response to the *Booker* decision.

After the *Lockridge* decision, Petitioner, with the assistance of counsel, filed an application for leave to appeal his convictions and sentences in the Michigan Court of Appeals, raising two issues: "[t]he trial court erred when it imposed a sentence above the guidelines . . . and [t]he trial court erred when it found substantial and compelling reasons to depart from the guidelines and it failed to cite reasons for the extent of the departure." (Pet'r's Supp. Br., ECF

No. 11, PageID.187.) Petitioner claims that the first issue was grounded in a claim that his plea was not voluntarily and knowingly made.

By order entered December 18, 2015, the Michigan Court of Appeals, in lieu of granting the delayed application for leave to appeal, remanded the case to the Allegan County Circuit Court for further proceedings consistent with the process set forth in *Lockridge* and *Crosby*. (Mich. Ct. App. Order, ECF No. 1, PageID.68.) Because the CSC-I sentence was an upward departure, according to *Lockridge*, a *Crosby* remand was unnecessary with regard to that sentence. The remand may have been necessary, however, for Petitioner's other sentences.

The trial court resolved the remand as if Petitioner had moved for resentencing. Although Petitioner takes issue with that characterization, it is entirely consistent with the *Lockridge* framework. The *Lockridge* decision advises that even where a remand is appropriate, the trial court should give the defendant an opportunity to decline to seek resentencing, *see Lockridge*, 870 N.W.2d at 524, presumably because resentencing may also involve the risk of a higher sentence. Logic suggests that a defendant who is ***not declining*** to seek resentencing is actually seeking resentencing—an act that would be appropriately characterized as a motion for resentencing.

The trial court concluded it would not impose a materially different sentence absent the sentencing guideline mandates that existed prior to *Lockridge*. (Pet'r's Supp. Br., ECF No. 11, PageID.188-189.) Accordingly, the court denied Petitioner's request to resentence.

Petitioner requested the appointment of counsel to permit him to pursue a challenge to the reasonableness of the court's sentence. Appointed counsel filed a second application for leave to appeal in the Michigan Court of Appeals, raising two issues: "the trial court erred by substantially departing upward from the minimum guidelines range . . . [and] the sentence imposed

constitutes cruel and unusual punishment." (*Id.*, PageID.190.) Petitioner notes that his arguments included the issue of proportionality under *People v. Milbourn*, 461 N.W.2d 1, (1990), and the trial court's violation of an agreement to not impose a 25-year sentence. By order entered September 8, 2016, the Michigan Court of Appeals denied leave "for lack of merit in the grounds presented." (Mich. Ct. App. Order, ECF No. 1, PageID.83.

Petitioner then filed a *pro per* application for leave to appeal in the Michigan Supreme Court raising one issue asking for plea withdrawal or resentencing. (Appl. for Leave to Appeal, ECF No. 1, PageID.100.) The supreme court denied leave. In a concurring statement, Justice Markman wrote as follows:

> For the reasons set forth in my concurring statement in *People v. Keefe*, 498 Mich. 962 (2015), I believe the trial court erred by accepting a plea agreement between defendant and the prosecutor that purported to allow the court to impose a minimum sentence below the 25-year mandatory minimum sentence for a first-degree criminal sexual conduct conviction "committed by an individual 17 years of age or older against an individual less than 13 years of age . . . ." MCL 750.520b(2)(b). I continue to believe that a "plea bargain cannot be allowed to supersede the Legislature's determination that a particular criminal offense is punishable by a mandatory minimum sentence." *Keefe*, 498 Mich. at 965. Because MCL 750.520b(2)(b) provides for a mandatory minimum sentence of 25 years for the crime to which defendant pleaded guilty, the trial court did not possess the discretion to impose a minimum sentence less than 25 years, and the trial court erred by concluding that the parties' plea agreement provided it that discretion. See MCL 769.34(2)(a) ("If a statute mandates a minimum sentence for an individual sentenced to the jurisdiction of the department of corrections, the court shall impose sentence in accordance with that statute.") (emphasis added). However, since the trial court, albeit in an exercise of judicial discretion, decided that there were "substantial and compelling" reasons to depart upwardly from the guidelines to sentence defendant to a 25–year minimum sentence, defendant ultimately received the sentence required by MCL 750.520b(2)(b). Accordingly, the trial court's error here was harmless and I concur with the Court's order denying leave to appeal.

*People v. VanRhee*, 892 N.W.2d 373 (Mich. 2017). Justice Markman has, several times, concurred in denials of leave as a means to highlight to the legislature that the courts may be undercutting legislative intent for a mandatory minimum sentence of 25 years where the victim of CSC-I is under the age of 13 years and the perpetrator is 17 years old or older. *See People v. Lucas*, 927

N.W.2d 259 (Mich. 2019); *People v. Barrera*, 886 N.W.2d 647 (Mich. 2016); *People v. Keefe*, 872 N.W.2d 688 (Mich. 2015).

Petitioner then returned to the trial court, filing a motion titled "Motion for *Crosby* Remand for Resentencing Determination" based on *Alleyne* and *Lockridge*. (Pet'r's Mot., ECF No. 1, PageID.107-121.) The prosecutor responded by noting, correctly, that a *Crosby* remand motion was not proper in the trial court and that a request for relief would properly be brought as a motion or relief from judgment under Michigan Court Rule 6.500. (Response, ECF No. 1, PageID.123.) The trial court denied Petitioner's motion as a procedurally improper motion for remand, not as a motion under Michigan Court Rule 6.500.

Petitioner filed a *pro per* application for leave to appeal the trial court's decision in the Michigan Court of Appeals. Shortly thereafter, on February 9, 2018, Petitioner filed his habeas corpus petition raising five grounds for relief, as follows:

I.      The trial court erred by substantially departing upward from the minimum guideline range.

II.     The sentence constitutes cruel and unusual punishment.

III.    [T]he . . . circuit court [failed to] follow the appeals court remand in accordance with *Alleyne* and *People v. Lockridge*.

IV.     [T]he decision in the recent Michigan Supreme Court case in *People v. Keefe* appl[ies] to the defendant's mandatory minimum sentence.

V.      [Petitioner] is entitled to plea withdraw[al] or resentencing where the trial court failed to follow MCR 6.302(c)(3) in informing the defendant of the trial court position on plea agreement only being advisory and that the court is not bound by a plea agreement.

(Pet., ECF No. 1, PageID.5-10, 17.)

Although Petitioner was convicted and sentenced in the Western District of Michigan, incarcerated in the Western District of Michigan, and, apparently, intended to file his petition in the Western District of Michigan, *see* (Pet., ECF No. 1. PageID.1), he mailed it to the

Eastern District of Michigan. (ECF No. 1, PageID.150.) Along with his petition, Petitioner filed an application to stay the proceedings and hold the petition in abeyance pending exhaustion of his state court remedies. The Eastern District of Michigan Court granted that relief. (Op. and Order, ECF No. 4.)

The Michigan Court of Appeals promptly denied leave to appeal. Petitioner filed an application for leave to appeal in the Michigan Supreme Court. The supreme court denied leave by order entered September 12, 2018.

After the supreme court denied leave for the last time, counsel appeared on Petitioner's behalf in this habeas proceeding. Counsel filed the supplemental brief on December 14, 2018. By order entered November 7, 2019, the petition was transferred to this Court where venue is proper.

## II.    AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 574 U.S. 1, 4 (2014); *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013); *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012); *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their

adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

## III. Discussion

### A. Knowing and voluntary plea

Although Petitioner has packaged and repackaged his challenges regarding the Allegan County Circuit Court proceedings during his multiple trips through the Michigan appellate courts, the crux of his complaint is that his plea was not knowingly and voluntarily made. A plea not voluntarily and intelligently made has been obtained in violation of due process and is void. *See McCarthy v. United States*, 394 U.S. 459, 466 (1969). Conversely, a voluntary and knowing plea made by an accused person who has been advised by competent counsel may not be collaterally attacked. *Mabry v. Johnson*, 467 U.S. 504, 508 (1984).

The test for determining a plea's validity is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances surrounding it," *Brady v. United States*, 397 U.S. 742, 749 (1970), and may consider

12

such factors as whether there is evidence of factual guilt. While courts may consider whether a factual basis for a guilty plea exists in their assessments of its validity, it has generally been held that the Constitution does not require that they ensure such a basis exists. *See Higgason v. Clark*, 984 F.2d 203, 208 (7th Cir. 1993) ("'Strong evidence of guilt' may suffice to sustain a conviction on an *Alford* plea, and may be essential under Rule 11 [of the Federal Rules of Criminal Procedure], but it is not necessary to comply with the Constitution.") (quoting *Alford*, 400 U.S. at 37); *see also Matthew v. Johnson*, 201 F.3d 353, 365 (5th Cir. 2000); *United States v. Tunning*, 69 F.3d 107, 111 (6th Cir. 1995) (citing *Higgason*, 984 F2d at 208); *Wallace v. Turner*, 695 F.2d 545, 548 (11th Cir. 1983); *Thundershield v. Solem*, 565 F.2d 1018 (8th Cir. 1977); *Edwards v. Garrison*, 529 F.2d 1374, 1376 (4th Cir. 1975); *Roddy v. Black*, 516 F.2d 1380, 1385 (6th Cir. 1975); *Freeman v. Page*, 443 F.2d 493, 497 (10th Cir. 1971).

In order to find constitutionally valid guilty (or *nolo contendere*[2]) plea, several requirements must be met. The defendant pleading must be competent, *see Brady*, 397 U.S. at 756, and must have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). The plea must be entered "voluntarily," i.e., not be the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant" or of state-induced emotions so intense that the defendant

---

[2]In Michigan, a plea of *nolo contendere* has essentially the same effect on the criminal prosecution as does a plea of guilty:

> Since a plea of *nolo contendere* indicates that a defendant does not wish to contest his factual guilt, any claims or defenses which relate to the issue of factual guilt are waived by such a plea. Claims or defenses that challenge a state's capacity or ability to prove defendant's factual guilt become irrelevant upon, and are subsumed by, a plea of *nolo contendere*. Hence, we hold that a plea of *nolo contendere* has the same effect upon a defendant's ability to raise an issue on appeal as does a plea of guilty. Only those defenses which challenge the very authority of the state to prosecute a defendant may be raised on appeal after entry of a plea of *nolo contendere*.

*People v. New*, 398 N.W.2d 358, 363 (Mich. 1986) (footnotes omitted).

was rendered unable to weigh rationally his options with the help of counsel. *Brady*, 397 U.S. at 750; *Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void."). The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving. *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation omitted). Finally, the defendant must have available the advice of competent counsel. *Tollett*, 411 U.S. at 267-68; *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970). The advice of competent counsel exists as a safeguard to ensure that pleas are voluntarily and intelligently made. *Cf. Henderson*, 426 U.S. at 647 ("[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit."); *Brady*, 397 U.S. at 754 (suggesting that coercive actions on the part of the state could be dissipated by counsel). Ineffective assistance of counsel will render a plea of guilty involuntary. *See Hill*, 474 U.S. at 56-57.

Petitioner suggests that his plea was not knowing and voluntary because he did not know that he could be sentenced to a 25-year minimum sentence. Petitioner argues: "'The permissible range of sentences' is one of the factors that defendants must be aware of before pleading guilty." (Pet'r's Supp. Br., ECF No. 11, PageID.196 (citing *Boykin v. Alabama*, 395 U.S. 238, 244 n.7 (1969).) Petitioner claims that he understood that the CSC-I charges carried a mandatory minimum of 25 years. By dispensing with that mandatory minimum by way of the

plea, Petitioner claims he understood that he "would receive a sentence of less than 25 years." (Pet'r's Supp. Br., ECF No. 11, PageID.197.)

Petitioner does not assert that his counsel, the prosecutor, or the trial court informed him that he would receive a sentence of less than 25 years, only that he believed the elimination of the mandatory minimum would result in a sentence of less than 25 years. Petitioner's belief, however, is belied by his own brief. He acknowledges that the trial court informed him that the offense to which he was entering his plea could result in incarceration for life. (*Id.*, PageID.185.) To the extent Petitioner entered that plea hearing believing his minimum sentence for CSC-I would be less than 25 years, the judge disabused him of that notion when she specifically advised him he could be incarcerated for life. Accordingly, with regard to his potential sentence exposure, Petitioner's plea was knowing enough and the state appellate court's determination regarding the knowing and voluntary nature of his plea is neither contrary to, nor an unreasonable application of, clearly established federal law.

## B. Breach of the plea agreement

Petitioner's claim regarding the unknowing and involuntary nature of his plea is interwoven with a distinct claim that the court breached the plea bargain. The Sixth Circuit has recognized that breach of a plea bargain is a violation of the federal constitution cognizable on habeas review. *Dixon v. Alexander*, 741 F.2d 121, 123 (6th Cir. 1984). The government may not openly breach a plea agreement. *See Mabry v. Johnson*, 467 U.S. 504, 509 (1984) ("[W]hen the prosecution breaches its promise with respect to an executed plea agreement, the defendant pleads guilty on a false premise, and hence his conviction cannot stand[.]"). As the Supreme Court stated in *Mabry*, "'when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.'" *Id.* at 509 (quoting *Santobello v. New York*, 404 U.S. 257, 262 (1971)).

Plea agreements are contractual in nature. In interpreting and enforcing them, courts use traditional principles of contract law. *See Smith v. Stegall*, 385 F.3d 993, 999 (6th Cir. 2004) (citing *United States v. Robison*, 924 F.2d 612, 613 (6th Cir. 1991)).

> One fundamental principle of contract interpretation is that "primary importance should be placed upon the words of the contract. Unless expressed in some way in the writing, the actual intent of the parties is ineffective, except when it can be made the basis for reformation of the writing." 11 Williston on Contracts § 31:4 (4th ed. 2000). Consistent with the principle articulated by Williston, this court has held that the state will be held to the literal terms of the plea agreement.

*Id.* (citing *United States v. Mandell*, 905 F.2d 970, 973 (6th Cir. 1990)). The content of a plea agreement and what the parties agreed to is a question of fact. *United States v. Lukse*, 286 F.3d 906, 909 (6th Cir. 2002).

In Petitioner's case, there is no dispute with regard to the terms of the bargain, the key term being elimination of the 25-year mandatory minimum; but, for a couple of reasons, Petitioner questions whether he actually received the benefit of that bargain. Petitioner's first claim of breach flows from the trial court's imposition of a 25-year minimum sentence despite the bargain. Petitioner's description of the proceedings in the trial court, however, makes clear that the trial court's imposition of a 25-year minimum sentence was not the product of a statutory mandate limiting her discretion. Instead, it was very clearly an exercise of her discretion to impose a sentence she believed to be appropriate under the circumstances.

The bargain as Petitioner describes it did not include any promise by the court to limit her exercise of discretion in sentencing. The bargain did not include any promise by the court to sentence Petitioner to less than 25 years. The bargain did not include any promise by the prosecutor with regard to a particular minimum sentence term. Accordingly, Petitioner's claim that the plea agreement was breached has no merit, and the court of appeals' rejection of the claim is neither contrary to, nor an unreasonable application of, clearly established federal law.

### C.    Illusory promise

Petitioner describes the promise to eliminate the 25-year statutory mandatory minimum as illusory.  In *Flowers v. Trierweiler*, No. 18-2190, 2019 WL 183852 (6th Cir. Jan. 10, 2019), the Sixth Circuit rejected a similar claim.  Flowers pleaded guilty to armed robbery in exchange for an offer by the prosecutor to waive the 25-year mandatory minimum.  The court then sentenced Flowers to a 35-year minimum sentence on the armed robbery conviction.  The Sixth Circuit rejected Flowers claim that the waiver of the mandatory minimum was illusory because Flowers received "the promised benefit of the *potential* of receiving a minimum sentence below 25 years . . . ."  *Flowers*, 2019 WL 183852, at *2 (emphasis supplied); *see also McAdoo v. Elo*, 365 F.3d 487, 497-98 (6th Cir. 2004) (a life sentence with the possibility of parole instead of a life sentence without the possibility of parole is not an illusory benefit, even if the parole board rarely grants parole to prisoners sentenced to life imprisonment).

Petitioner alternatively suggests that he was deprived of the benefit of his bargain because, as a matter of law, neither the court nor the prosecutor could dispense with the statutory mandatory minimum as part of the plea bargain.  That is the position articulated by Justice Markman in his concurring statements in Petitioner's case, *Lucas*, *Barrera*, and *Keefe*.  Petitioner presents Justice Markman's position as if it carries precedential value.  It does not, on two levels, have any precedential value.  First, "denials of leave to appeal do not establish a precedent." *Haksluoto v. Mt. Clemens Regional Medical Center*, 901 N.W.2d 577, 582 n.3 (Mich. 2017) (citing Mich. Ct. R. 7.301(E)).  Second, even if denial of leave were precedential, Justice Markman was the only Justice that adopted the reasoning upon which Petitioner relies.  Unless a Michigan Supreme Court opinion obtains four signatures, it is not binding under the doctrine of *stare decisis*. *People v. Jackson*, 212 N.W.2d 918, 921 (Mich. 1973).  Moreover, as is evident from Justice Markman's statements in his most recent *Keefe*-based concurring denial of leave, he does ***not*** state

that the mandatory minimum sentence set forth in Mich. Comp. Laws § 750.520b cannot be waived by plea. To the contrary, he accepts that the practice occurs and advises the Legislature that it should assess whether "the outcome of this case is in accordance with its intentions." *Lucas*, 927 N.W.2d at 259. Thus, Petitioner's claim that he was robbed of his bargain because the court was statutorily required to, and did, impose a 25-year mandatory minimum finds no support in the materials he has provided.

D.     *Alleyne* **claims**

Petitioner sought a stay of this action to permit him to pursue *Alleyne/Lockridge* claims in the state courts. From the inception of that line of authority in *Apprendi* to its most recent refinement in *Alleyne*, the United States Supreme Court has never suggested that judicial fact-finding in support of the court's exercise of discretion, as happened here when the court departed upward from the minimum range established by the guidelines, violates the Sixth Amendment. Petitioner's *Alleyne* claim is meritless.

E.     **Cruel and unusual sentence**

Petitioner contends that the 25-year minimum sentence for CSC-I is cruel and unusual. The United States Constitution does not require strict proportionality between a crime and its punishment. *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment." *Marks*, 209 F.3d at 583; *see also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (gross disproportionality principle applies only in the extraordinary case); *Ewing v. California*, 538 U.S. 11, 36 (2003) (principle applies only in "'the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality'") (quoting *Rummel v. Estelle*, 445 U.S. 263, 285 (1980)). A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel

18

and unusual punishment.'" *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)).  Ordinarily, "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995). Petitioner was not sentenced to death or life in prison without the possibility of parole, and his sentence falls within the maximum penalty under state law.  Petitioner's sentence does not present the extraordinary case that runs afoul of the Eighth Amendment's ban of cruel and unusual punishment.

To the extent Petitioner intends to suggest that his sentence was disproportionate under *People v. Milbourn*, 461 N.W.2d. 1 (Mich. 1990) or unreasonable under *Lockridge*, he fails to raise a cognizable habeas claim.  In *Milbourn*, the Michigan Supreme Court held that a sentence must be proportional, a sentencing court must exercise its discretion within the bounds of Michigan's legislatively prescribed sentence range and pursuant to the intent of Michigan's legislative scheme of dispensing punishment according to the nature of the offense and the background of the offender.  *Milbourn*, 461 N.W.2d at 9-10; *People v. Babcock*, 666 N.W.2d 231, 236 (Mich. 2003).  In *Lockridge*, the Michigan Supreme Court altered the legislative scheme to comply with constitutional requirements, making it advisory rather than mandatory.  The court did not leave the exercise of judicial discretion in sentencing without any boundary: where the sentencing court strays outside the applicable sentencing guidelines range, the court held that the resulting sentence must be reasonable.  *Lockridge*, 870 N.W.2d at 521.  Two years later, the Michigan Supreme Court indicated that "reasonableness" as contemplated by *Lockridge* is determined by inquiring whether the sentence was proportional under *Milbourn*.  *People v. Steanhouse*, 902 N.W.2d 327, 329 (Mich. 2017).

It is plain that *Milbourn* was decided under state, not federal, principles. *See Lunsford v. Hofbauer*, No. 94-2128, 1995 WL 236677, at *2 (6th Cir. Apr. 21, 1995); *Atkins v. Overton*, 843 F. Supp. 258, 260 (E.D. Mich. 1994). "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, Rules Governing Habeas Corpus Cases). The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Thus, any claim based on *Milbourn* proportionality requirements or *Lockridge* reasonableness requirements is not cognizable in a habeas corpus action.

### F.       Plea withdrawal

Petitioner claims that the trial court erred in denying Petitioner's motion to withdraw his plea. A state defendant has no constitutionally guaranteed right to withdraw a guilty plea. *See Carwile v. Smith*, 874 F.2d 382 (6th Cir. 1989). The only constitutional challenge that a habeas court may entertain with regard to a plea of guilty is that the plea was not entered in a knowing and voluntary fashion under the standards set forth in *Boykin*, 395 U.S. at 238. A habeas court is restricted to these federal principles, and may not grant habeas relief on the basis of state law governing the taking or withdrawal of guilty pleas. *Riggins v. McMackin*, 935 F.2d 790, 794-95 (6th Cir. 1991). Consequently, the question whether petitioner should have been allowed in the court's discretion to withdraw his guilty plea under state-court rules is not reviewable in habeas corpus.

For all of the reasons set forth above, Petitioner has failed to show that the state trial court's acceptance of his plea, refusal to permit withdrawal of his plea, or imposition of a 25-year minimum sentence, or the appellate courts' refusal to overturn those trial court actions, is contrary to, or an unreasonable application, clearly established federal law. Accordingly, Petitioner is not entitled to habeas relief.

## IV.      Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner

a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## <u>Conclusion</u>

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.

Dated:  <u>  January 16, 2020     </u>               <u> /s/ Paul L. Maloney           </u>
                                                                Paul L. Maloney
                                                                United States District Judge